**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

| | |
|---|---|
| STACY KLARQUIST, | |
| Plaintiff, | CIVIL ACTION  No. 3:21-cv-38 |
| v. | COMPLAINT |
| HEARTLAND FEDERAL CREDIT UNION, EXPERIAN INFORMATION SOLUTIONS, INC., EQUIFAX INFORMATION SERVICES, LLC, and TRANS UNION, LLC, | JURY TRIAL DEMANDED |
| Defendants. | |

## COMPLAINT

**NOW COMES**, STACY KLARQUIST ("Plaintiff"), by and through her undersigned counsel, complaining of the Defendants, Heartland Federal Credit Union ("Heartland"), Experian Information Solutions, Inc., ("Experian"), Equifax Information Services, LLC ("Equifax"), and Trans Union, LLC ("Trans Union") (collectively, "Defendants"), as follows:

## NATURE OF THE ACTION

1.     Plaintiff brings this action seeking redress for Defendants' violations of the Fair Credit Reporting Act ("FCRA") pursuant to 15 U.S.C. §1681.

2.     Congress passed the FCRA to "ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 52, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007).

## JURISDICTION AND VENUE

3.     Subject matter jurisdiction is conferred upon this Court by the FCRA, 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

1

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. §1391b(1) and (2) because Heartland's principal of business is located in this judicial district and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial circuit.

**PARTIES**

5.      Plaintiff is a natural person over 18-years-of-age who resides in this judicial district.

6.      Defendant Heartland maintains its principal place of business in Dayton, Ohio. Heartland is a full-service financial co-operative that extends credit to its members. Heartland is a furnisher of information to the major credit reporting agencies, including Experian, Equifax, and TransUnion.

7.      Defendant Experian maintains its principal place of business in Costa Mesa, California. Experian is a credit reporting agency and is in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports and credit files to third parties bearing on a consumer's creditworthiness, credit standing, and credit capacity. Experian regularly conducts business in the State of Ohio.

8.      Defendant Equifax maintains its principal place of business in Atlanta, Georgia. Equifax is a credit reporting agency and is in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports and credit files to third parties bearing on a consumer's creditworthiness, credit standing, and credit capacity. Equifax regularly conducts business in the State of Ohio.

9.      Defendant Trans Union maintains its principal place of business in Chicago, Illinois. Trans Union is a credit reporting agency and is in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports

2

and credit files to third parties bearing on a consumer's credit worthiness, credit standing, and credit capacity. Trans Union regularly conducts business in the State of Ohio

10.      Defendants Experian, Equifax, and Trans Union (collectively, "the CRA Defendants") are the three most prominent credit reporting agencies in the United States. Accordingly, the credit and lending industry heavily rely on the information provided the CRA Defendants in their lending decisions.

## FACTUAL BACKGROUND

11.      In 2011, Plaintiff opened a Visa credit card issued by Heartland ("subject account").

12.      In 2019, Plaintiff was on the market for a mortgage loan and a car loan and decided to obtain her credit reports to ensure that she was in a good borrowing position.

13.      After obtaining her credit reports, Plaintiff discovered that the subject account was reporting a balance on her credit reports.

14.      Plaintiff was surprised to see the subject account reporting with a balance because she believed that she paid off the subject account a few years ago.

15.      In March 2019, Plaintiff called Heartland regarding the alleged balance on the subject account.

16.      During this call, Plaintiff spoke to Heartland's representative Nicole and Plaintiff advised Nicole that she believed that the subject account was paid off.

17.      Nicole advised Plaintiff that the subject account was not paid off and that the subject account had a balance of $1,209.

18.      In response, Plaintiff advised Nicole that she would like to pay the alleged balance and asked Nicole how she could make payment. Nicole advised Plaintiff that she would be able to

make a payment in person at any Heartland branch and that a branch representative would provide

Plaintiff with a receipt for the payment.

19.     Nicole further advised Plaintiff that once the balance is paid, the account would be

reported as "paid in full" to the credit reporting agencies and would not report derogatorily as long

as Plaintiff paid the balance by April 13, 2019. During this call, Plaintiff requested that Heartland

send her a statement for the subject account.

20.     Shortly thereafter, Heartland sent Plaintiff a statement that alleged that the

subject account had a balance of $1,209.00.

21.     On April 1, 2019, prior to the April 13, 2019 statement due date, Plaintiff made a

$1,209.00 payment via check in person at a Heartland branch in Dayton, Ohio. A Heartland

employee processed the payment and provided Plaintiff with a receipt for the payment.

### a.  Plaintiff's Disputes to Experian

22.     In May 2019, Plaintiff discovered that Experian was reporting the subject account

as "Paid, Closed. $1,209 written off" and as "charged off" as of May 2019.

23.     Notably, Experian began reporting the subject account as "charged off" after

Plaintiff paid the subject account in full on April 1, 2019.

24.     Experian's reporting was inaccurate because it began reporting the subject account

as "charged off" after Plaintiff paid off the subject account. Accordingly, the subject account

should have been reporting as paid in full without the "charged off" notation.

25.     From May 2019 through September 2019, Plaintiff submitted no less than three (3)

disputes to Experian regarding the inaccurate reporting of the subject account. Specifically,

Plaintiff disputed the "charged off" notation on the subject account. As part of her disputes,

Plaintiff submitted (1) the March 2019 statement from Heartland; (2) the receipt of the April 1,

2019 payment that paid off the subject account; (3) a copy of the endorsed check for the $1,209.00 payment to Heartland that paid the subject account in full.

26.     Upon information and belief, Heartland received notice of Plaintiff's disputes and supporting documents from Experian within five days of Experian's receipt of Plaintiff's disputes. *See* 15 U.S.C. §1681i(a)(2).

27.     In response to each dispute, Heartland and Experian failed to correct the inaccurate reporting of the subject account and instead continued to inaccurately report the subject account as "charged off."

28.     In November 2020, Plaintiff obtained her Experian credit report and discovered that Experian was reporting the status of the subject account as "120 Days Late."  Experian's reporting of the subject account was inaccurate because the subject account was paid in full on April 1, 2019 and was not "120 Days Late."

### b.  Plaintiff's Disputes to Equifax

29.     In May 2019, Plaintiff discovered that Equifax was reporting the subject account as "charged off" with a last payment date of September 11, 2014.

30.     Equifax's reporting was inaccurate because the subject account was paid in full and the last payment date was April 1, 2019, not September 11, 2014.

31.     From May 2019 through October 2020, Plaintiff submitted no less than three (3) disputes to Equifax regarding the inaccurate reporting of the subject account. Specifically, Plaintiff disputed the "charged off" notation on the subject account and the last payment date of September 11, 2014.  As part of her disputes, Plaintiff submitted (1) the March 2019 statement from Heartland; (2) the receipt of the April 1, 2019 payment that paid off the subject account; (3) a copy of the endorsed check for the $1,209.00 payment to Heartland that paid the subject account in full.

32.    Upon information and belief, Heartland received notice of Plaintiff's disputes and supporting documents from Equifax within five days of Equifax's receipt of Plaintiff's disputes. *See* 15 U.S.C. §1681i(a)(2).

33.    In response to each dispute, Heartland and Equifax failed to correct the inaccurate reporting of the subject account and instead continued to inaccurately report the subject account as "charged off" with a last payment date of September 11, 2014.

34.    In November 2020, Plaintiff obtained her Equifax credit report and discovered that Equifax was still inaccurately reporting the subject account as "charged off" with a last payment date of September 11, 2014.

### c.  Plaintiff's Disputes to Trans Union

35.    In May 2019, Plaintiff discovered that Trans Union was reporting the subject account as "charged off," with a balance of $1,209, a past due amount of $297, and last payment date of September 11, 2014.

36.    Trans Union's reporting was inaccurate because the subject account was paid in full on April 1, 2019, and therefore the subject account did not have a balance and was not past due. Moreover, the last payment date was April 1, 2019, not September 11, 2014.

37.    From May 2019 through September 2019, Plaintiff submitted no less than two (2) disputes to Trans Union regarding the inaccurate reporting of the subject account. Specifically, Plaintiff disputed (1) the inaccurate balance of $1,209, (2) the past due/charged off status; and (3) the last payment date of September 11, 2014. As part of her disputes, Plaintiff submitted (1) the March 2019 statement from Heartland; (2) the receipt of the April 1, 2019 payment that paid off the subject account; (3) a copy of the endorsed check for the $1,209 payment to Heartland that paid the subject account in full.

38.     Upon information and belief, Heartland received notice of Plaintiff's disputes and supporting documents from Trans Union within five days of Trans Union's receipt of Plaintiff's disputes. *See* 15 U.S.C. §1681i(a)(2).

39.     In response to each dispute, Heartland and Trans Union failed to correct the inaccurate reporting of the subject account and instead continued to inaccurately report the subject account as "charged off," with a balance of $1,209, a past due amount of $297, and last payment date of September 11, 2014.

40.     In November 2020, Plaintiff obtained her Trans Union credit report and discovered that Trans Union was still inaccurately reporting the subject account as having a balance of $1,209, a past due amount of $297, and last payment date of September 11, 2014.

### DAMAGES

41.     With the exception of the subject account, Plaintiff does not have any derogatory accounts on her credit report and has maintained an excellent credit history. Specifically, even with the inaccurate reporting of the subject account, Plaintiff's credit score is still above 700.

42.     The inaccurate reporting of the subject account has wreaked havoc on Plaintiff and her financial affairs.

43.     The inaccurate reporting of the subject account has devastated Plaintiff's creditworthiness because it creates a false impression that Plaintiff is in default on the subject account, thus rendering Plaintiff a high-risk consumer and damaging her ability to obtain credit.

44.     As a direct result of the inaccurate reporting of the subject account, Plaintiff was denied a car loan in September 2020.

45.     As a direct result of the inaccurate reporting of the subject account, Plaintiff was disqualified from obtaining a mortgage loan under the First-Time Home Buyer Program, which

would have required a 3.5% down payment and would not have required Plaintiff to pay for mortgage insurance.

46.     As a direct result of the inaccurate reporting of the subject account, Plaintiff was forced to obtain a conventional mortgage loan at a higher interest rate and higher minimum down payment than what she was eligible for under the First-Time Home Buyer Program. Moreover, the conventional loan Plaintiff obtained required mortgage insurance at a rate of $107.73 per month for 10 years, a hefty cost that Plaintiff would not have had to incur had she qualified for the First-Time Home Buyer Program.

47.     Moreover, the inaccurate reporting of the subject account has impaired Plaintiff's ability to refinance her current mortgage loan and take advantage of historical low mortgage interest rates.

48.     Accordingly, Plaintiff has suffered significant monetary loss as a result of the erroneous reporting of the subject account.

49.     Defendants' reckless inaccurate reporting of the subject account has frustrated Plaintiff's ability to control her credit score and her ability to benefit from the credit history she has built over the years.

50.     Moreover, the inaccurate reporting of the subject account has jeopardized Plaintiff's security clearance at her current job.

51.     As a result of Defendants' conduct, Plaintiff has suffered various types of damages as set forth herein, including specifically, credit denials, humiliation, the loss of credit opportunity, loss of time disputing the inaccurate reporting, time expended monitoring her credit files (hundreds of hours), excruciating mental anguish, lack of sleep, anxiety, and out of pocket expenses for credit monitoring services.

52.     Due to Defendants' inexplicable refusal to correct the reporting of the subject account, Plaintiff was forced to file this case to compel Defendants to correct the reporting of the subject account.

## COUNT I – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
(Against Heartland)

53.     Plaintiff incorporates Paragraphs 1 through 52 as fully set forth herein.

54.     Plaintiff is a "consumer" as defined by 15 U.S.C. §§1681a(b) and (c).

55.     Plaintiff is a "person" as defined by 15 U.S.C. §1681a(b).

56.     Heartland is a "furnisher of information" as defined by 15 U.S.C. §1681s-2 and a "financial institution" as defined by 15 U.S.C. §1681a(t).

57.     At all times relevant, the above mentioned credit reports were "consumer reports" as the term is defined by §1681a(d)(1).

58.     Heartland violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct a reasonable investigation into each of Plaintiff's eight (8) disputes submitted by Plaintiff to Experian, Equifax, and Trans Union.

59.     Heartland violated 15 U.S.C. §1681s-2(b)(1)(B) by repeatedly failing to review all relevant information included in Plaintiff's disputes that were submitted to Experian, Equifax, and Trans Union.

60.     Had Heartland taken any meaningful steps to investigate Plaintiff's valid disputes, it would have determined that the subject account was erroneously reporting as unpaid, charged off, and delinquent.

61.     Heartland violated 15 U.S.C. §§1681s-2(b)(1)(C) and (D) by failing to report the results of its investigations to Experian, Equifax, and Trans Union after being put on notice and

discovering that it was reporting inaccurate and misleading information pertaining to the subject account.

62.     Heartland violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to modify, delete, or permanently block its inaccurate credit reporting of the subject account after receipt of each of Plaintiff's eight (8) disputes.

63.     Heartland violated 15 U.S.C. §1681s-2(a)(3) by failing to report the subject account as disputed by Plaintiff to Experian, Equifax, and Trans Union.

64.     Despite being on notice of its erroneous credit reporting of the subject account, and Plaintiff's efforts to correct the errors, Heartland repeatedly refused to correct its erroneous credit reporting. Instead, Heartland repeatedly furnished and re-reported inaccurate and misleading information regarding the subject account to Experian, Equifax, and Trans Union.

65.     Any reasonable investigation by Heartland would have confirmed the veracity of Plaintiff's disputes, yet Heartland's erroneous credit reporting of the subject account persists in Plaintiff's Equifax and Trans Union credit reports.

66.     Had Heartland taken any meaningful steps to investigate Plaintiff's valid disputes, it would have permanently corrected its erroneous credit reporting. Plaintiff provided supporting documentation in her disputes, yet Heartland repeatedly ignored the supporting evidence and continued its erroneous reporting of the subject account.

67.     By deviating from the standards established by the credit industry and the FCRA, Heartland acted with reckless and willful disregard for its duty as a furnisher to report accurate and complete consumer credit information to Experian, Equifax, and TransUnion.

68.     Heartland has exhibited a pattern of refusing to correct credit reporting errors despite being on notice that its false credit reporting is wreaking havoc on consumers' credit scores,

ultimately valuing its own bottom line above its grave responsibility to report accurate data to the credit reporting agencies.

69.     As set forth above, Plaintiff was significantly harmed by Heartland's repeated inaccurate credit reporting of the subject account.

**WHEREFORE**, Plaintiff prays for the following relief:

A.      A finding that Heartland's conduct as set forth herein violates the FCRA;

B.      An order compelling Heartland to cease reporting inaccurate information pertaining to the subject account on Plaintiff's credit reports;

C.      An award of compensatory damages to Plaintiff to be determined by the jury;

D.      An award of statutory damages of $1,000.00 for each violation of the FCRA;

E.      An award of punitive damages to be determined by the jury; and

F.      An award of reasonable attorney's fees and costs pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o.

**COUNT II – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**
(Against Experian, Equifax, and Trans Union)

70.     Plaintiff incorporates Paragraphs 1 through 52 as fully set forth herein.

71.     The CRA Defendants are each a ""consumer reporting agency" as defined by 15 U.S.C. §1681a(f).

72.     The CRA Defendants are each a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. §1681a(p).

73.      At all times relevant, the above mentioned credit reports were "consumer reports" as that term is defined by §1681a(d).

74.      At all times relevant, Plaintiff was a "consumer" as the term is defined by 15 U.S.C. §1681a(c).

75.     The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

76.     The FCRA requires the CRA Defendants to implement procedures and systems to promote accurate credit reporting.

77.     If a consumer notifies a credit reporting agency of a dispute concerning the accuracy of any item of credit information, the FCRA requires the credit reporting agency to conduct a reasonable investigation to determine whether the disputed information is inaccurate and record the current status of the disputed information or delete the disputed information within 30 days of receiving the dispute. 15 U.S.C. §1681i(a)(1)(A).

78.     Plaintiff provided the CRA Defendants with irrefutable evidence that supported her contention that that the subject account was reporting inaccurately.  Specifically, Plaintiff provided the CRA Defendants with (1) the March 2019 statement from Heartland; (2) the receipt of the April 1, 2019 payment that paid off the subject account; (3) a copy of the endorsed check for the $1,209 payment to Heartland that paid the subject account in full.

79.     A cursory review of the evidence submitted by Plaintiff would have confirmed that Heartland and the CRA Defendants were erroneously reporting the subject account as "charged off," with a balance of $1,209, and past due. Moreover, the evidence also provided irrefutable proof that the last payment date was in 2019 and not 2011.

80.     The CRA Defendants failed to conduct any meaningful investigation into Plaintiff's disputes. Instead, they continued to blindly report the false information provided to them by Heartland.

81.     The CRA Defendants violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in preparation of the consumer reports it furnished and refurnished concerning Plaintiff. Upon information and belief, the CRA Defendants distributed patently false and materially misleading consumer reports concerning Plaintiff to third parties.

82.     The CRA Defendants failed to follow reasonable procedures to assure maximum possible accuracy by repeatedly ignoring the evidence provided by Plaintiff and blindly accepting Heartland's erroneous reporting as accurate.

83.     Had the CRA Defendants followed reasonable procedures to assure maximum possibly accuracy, they would have reviewed the evidence submitted by Plaintiff and promptly discovered that the information that Heartland was reporting was erroneous. Instead, the CRA Defendants repeatedly accepted Heartland's erroneous information as true and continued their reporting of the erroneous information.

84.     The CRA Defendants should have implemented procedures and safeguards to avoid the blind reliance on the information that is being reported by furnishers such as Heartland.

85.     The CRA Defendants violated 15 U.S.C. §1681i(a)(1) by failing to (1) conduct a reasonable investigation into Plaintiff's disputes and (2) delete the inaccurate information from Plaintiff's credit files.

86.     Had the CRA Defendants conducted a reasonable investigation into Plaintiff's valid disputes, they would have promptly determined that the subject account was reporting erroneously.

87.     The CRA Defendants took no meaningful steps to determine whether the information Heartland was reporting was accurate and reliable. Instead, the CRA Defendants blindly reported any information that Heartland was reporting with no regard to its accuracy.

88.     At very minimum, the CRA Defendants should have requested that Heartland provide proof that its reporting was accurate. Instead, the CRA Defendants continued to recklessly report false and unreliable information regarding the subject account.

89.     The CRA Defendants violated 15 U.S.C. §1681i(a)(2) by failing to provide adequate notification of Plaintiff's disputes to Heartland. Upon information and belief, the CRA Defendants may have failed to include all relevant information provided by Plaintiff to the CRA Defendants as part of her disputes.

90.     The CRA Defendants violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from Plaintiff with regard to the subject account.

91.     The CRA Defendants violated 15 U.S.C. §1681i(a)(5) by failing to delete or modify the inaccurate information that was the subject of Plaintiff's disputes after Plaintiff submitted irrefutable proof that the subject account was reporting inaccurately.

92.     The CRA Defendants violated 15 U.S.C. §1681c(f) by failing to notate that Plaintiff disputed the reporting of the subject account. The CRA Defendants are required to notate each account that a consumer disputes as "disputed" in each consumer report that includes the disputed information.

93.     The CRA Defendants had actual knowledge that the inaccurate reporting of the subject account as delinquent and with a balance would have a significant adverse effect on Plaintiff's credit worthiness and ability to obtain credit.

94.     Despite having actual knowledge that Plaintiff's credit files contained erroneous information, the CRA Defendants readily distributed Plaintiff's inaccurate and misleading credit reports to one or more third parties, thereby misrepresenting facts about Plaintiff and Plaintiff's creditworthiness.

95.     By deviating from the standards established by the credit reporting industry and the FCRA, the CRA Defendants acted with a reckless disregard for their duties to report accurate and complete consumer credit information.

96.      It is the CRA Defendants' regular business practice to blindly report disputed information without taking the required investigatory steps to meaningfully verify such information as accurate.

97.     The CRA Defendants' non-compliance with the requirements of the FCRA is indicative of the reckless, willful, and wanton nature of their mistreatment of Plaintiff.

98.     The CRA Defendants have exhibited a pattern of refusing to correct errors in consumer credit files despite being on notice of patently false and materially misleading information contained in such files, ultimately valuing their own bottom line above their grave responsibility to report accurate consumer data.

99.     As stated above, Plaintiff was significantly harmed by the CRA Defendants' conduct.

**WHEREFORE**, Plaintiff prays for the following relief:

A.     A finding that the CRA Defendants' conduct as set forth herein violated the FCRA;

B.     An Order compelling the CRA Defendants to delete all the inaccurate information from Plaintiff's credit reports and credit files;

C.     An award of compensatory damages to Plaintiff to be determined by the jury;

D.     An award of statutory damages of $1,000.00 for each violation of the FCRA;

E.      An award of punitive damages to be determined by the jury; and

F.      An award of reasonable attorney's fees and costs pursuant to 15 U.S.C. §1681n and

        15 U.S.C. §1681o; and

G.      Awarding any other relief as this Honorable Court deems just and appropriate.


Date: January 29, 2020                          Respectfully submitted,

                                                By: s/ Jonathan Hilton
                                                Jonathan Hilton (0095742)
                                                HILTON PARKER LLC
                                                10400 Blacklick-Eastern Rd NW, Suite 110
                                                Pickerington, OH 43147
                                                Tel: (614) 992-2277
                                                Fax: (614) 927-5980
                                                jhilton@hiltonparker.com
                                                *Local Counsel for Plaintiff*


                                                Mohammed O. Badwan, Esq.*
                                                Sulaiman Law Group, Ltd.
                                                2500 S. Highland Ave.
                                                Suite 200
                                                Lombard, Illinois 60148
                                                Direct Line (630) 575 - 8180
                                                Fax (630) 575 - 8188
                                                *\* Pro hac vice motion to be submitted*
                                                *Trial Counsel for Plaintiff*